# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHARON K. STEWART,

          Plaintiff,

    v.

FEDERAL COMMUNICATIONS
COMMISSION,

        Defendant.

Civil Action No. 15-57 (CKK)

## MEMORANDUM OPINION
(April 8, 2016)

Plaintiff, proceeding *pro se*, is an employee of the Federal Communications Commission ("FCC").  Plaintiff filed suit against Defendant, the FCC, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging claims of hostile work environment, gender discrimination, and retaliation.  Presently before the Court is Defendant's [7] Motion to Dismiss in Part and for Summary Judgment in Part ("Defendant's Motion").   Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.  The Court grants Defendant's motion to dismiss with respect to Count Two (gender discrimination), Count Four (retaliation) and Count Five (gender discrimination and retaliation).  The Court denies Defendant's motion to dismiss with respect to Count One (hostile work environment) and denies Defendant's motion for summary judgment on Count Three (retaliation).

---

[1] The Court's consideration has focused on the following documents:  Plaintiff's Complaint, ECF No. [1]; Defendant's Motion to Dismiss in Part and for Summary Judgment in Part, ECF No. [7]; Plaintiff's Opposition to Defendant's Motion, ECF No. [11]; and Defendant's Reply in Support of Motion, ECF No. [16].

## I. BACKGROUND

For the purposes of Defendant's Motion to Dismiss, the Court accepts as true the well-pleaded allegations in Plaintiffs' Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the principal facts pertaining to the issues raised in the pending motions, reserving further presentation of the facts for the discussion of the individual issues below.

### A. Factual Background

Plaintiff, proceeding *pro se*, is an employee within the FCC's Office of Communications Business Opportunities ("OCBO"). Compl. at 1. Plaintiff has been an employee of the Federal Government for over thirty years. *See id.* Presently, Plaintiff works for the FCC as a "Women's Outreach Specialist," which is classified at the GS-12 grade level. *Id.* at 3. Plaintiff is suing the FCC, alleging claims of hostile work environment, gender discrimination, and retaliation. *See id.* at 2-6.

With respect to Plaintiff's hostile work environment claim, Plaintiff alleges that her immediate supervisor, Mr. Thomas Reed, failed to act on, and protect her from, her male co-worker's "systematic viewing of pornography" in the cubicle adjacent to hers, despite her reporting of the behavior on multiple occasions. *Id.* at 2. According to the Complaint, the pornography watching became so "severe and persuasive" that her coworker invited other males to join him in his cubicle. *Id.* Plaintiff alleges that she would "hear groans – mmm, mmm, ahh – in response to the pornography viewings," and that she feared for her safety because "[o]ne of the male viewers would stand guard looking for [her]" *Id.* Plaintiff, citing deposition testimony that her supervisor admitted to having sex in his Federal office, states that she feels "unsafe,

violated, petrified and dominated against these males in this sexually fueled and misogynistic

Federal environment." *Id.*

With respect to Plaintiff's gender discrimination claim, Plaintiff alleges that her

supervisor, Mr. Reed, assigned her administrative duties that were the "official full-time

responsibilities of [the] male GS-9, Senior Staff Assistant" whom Plaintiff alleges was routinely

viewing pornography in the cubicle next to hers. *Id.* at 3.  Plaintiff further alleges that her

supervisor admitted in a deposition that he does not delegate administrative responsibilities to

male non-staff assistant employees within the OCBO.  *Id.*  Plaintiff also alleges that when she

objected that the assigned duties fell within her position description, her supervisor called her

"belligerent, angry, and hostile" and "threatened [her] job security by stating that should [she]

not perform the administrative duties, then [she] could find another job where [she] could thrive

and prosper."  *Id.*  Finally, with respect to Plaintiff's gender discrimination claim, Plaintiff

alleges that she was "bombarded with offensive unwelcomed email conversations of [her

supervisor's] personal life" and that her supervisor accused her of improperly possessing the

office's master keys in her home.  *Id.* at 3, 4.

With respect to Plaintiff's retaliation claims, Plaintiff alleges that she was singled out by

Mr. Reed in 2012 after she began pursuing an EEO action against him that same year.  *Id.* at 4.

Plaintiff further alleges that she was the "sole employee [in her] office that failed to receive any

awards or merit increases" for Fiscal Year 2012.  *Id.* at 4.  In addition, Plaintiff alleges that after

she filed an informal EEO complaint against Mr. Reed, Plaintiff's second-level supervisor, Ms.

Carolyn A. Fleming-Williams, called her into a "reprisal meeting" and "harassed" her with

"fabrications" that Plaintiff had not been communicating with Ms. Fleming-Williams and that

there were problems with Plaintiff's work on the "Section 610 Report."[2]  *Id.* at 5.  According to

the Complaint, Ms. Fleming-Williams questioned Plaintiff regarding the EEO claim and

threatened Plaintiff to reconsider her career goals.  *Id.*

        In addition to the allegations described above, Plaintiff also contends that she has not

been compensated at a rate commensurate with her work performance.  *Id.* at 6.  Plaintiff alleges

that "[s]ince 2004," she had "been performing the delegated duties of the Section 610 Report,"

which had previously been performed by a now-retired male GS-14 attorney[3]—two grade levels

above Plaintiff.  *Id.*  According to the Complaint, Plaintiff requested that she be compensated at a

rate at least commensurate for her work and with her colleagues, but that her supervisors

disputed Plaintiff's contentions that she was performing the higher level work.  *Id.*

        Plaintiff also contends that "[b]ecause [her] performing higher-level work and not

receiving adequate pay was a component of the EEO complaint, Ms. Fleming-Williams

immediately removed [her] substantive duties in connection with the Section 610 and ultimately

the entire duties" regarding the Section 610 Reports.  *Id.*  According to the Complaint, the

Section 610 Reports for 2011, 2012, 2013, and 2014 have not been completed by anyone else in

the office.  *Id.*

**B.  Plaintiff's EEO Action**

        On October 15, 2012, Plaintiff, represented by counsel, filed the informal EEO complaint

referenced above.  *Id.* at 6.  According to the Complaint, the EEO complaint was not resolved at

---

[2]  As stated in footnote 1 of Plaintiff's Opposition, under the Regulatory Flexibility Act of 1980,
5 U.S.C. § 610 *et. seq.*, the FCC, along with other federal agencies, is required to provide for the
review of final rules within ten years of their publications.  For the purposes of the FCC, this
means that every year, it publishes a list of ten-year-old rules that have, or might have, a
"significant impact . . . on a substantial number of small entities."

[3] Plaintiff also alleges that the retired employee was white.  However, race is not an alleged basis
of discrimination in Plaintiff's Complaint.

the informal stage, and Plaintiff pursued a formal EEOC action.  *See id.* at 6-7.  In spring 2014,

the parties undertook discovery, and Plaintiff, by that time proceeding *pro se*, took the

depositions of her supervisors, Mr. Reed and Ms. Fleming-Williams.  After the close of

discovery, the FCC filed a Motion for Summary Judgment, and the parties underwent settlement

negotiations that were ultimately unsuccessful.  *See id.* at 7.  Before the Administrative Law

Judge issued an Order on the FCC's Motion for Summary Judgment, Plaintiff filed a

"Withdrawal of Request for Hearing," which Plaintiff later attempted to withdraw, stating that

she had been "coerced to withdraw because of the threatening and intimidating meeting" that had

transpired with her supervisors a few weeks prior to filing the "Withdrawal of Request for

Hearing."  *Id.* at 8.  On October 24, 2014, the Administrative Law Judge issued an Order of

Dismissal, noting that Plaintiff had given notice that she "intended to file a complaint in Federal

District Court involving the same issues/claims in the above captioned complaint."  *Id.* at 9.

On October 28, 2014, the Administrative Law Judge denied Plaintiff's request to withdraw her

"Withdrawal of Request for Hearing."  *Id.* at 8.

### C.  The Instant Action

On January 14, 2015, Plaintiff, proceeding *pro se*, filed her Complaint in this Court,

containing the allegations described above.  Plaintiff's Complaint identifies five claims upon

which Plaintiff seeks relief:  (1) "Hostile Work Environment" (Claim 1); (2) "Discrimination

Based on Gender" (Claim 2); (3) "Reprisal for EEO Filing and Discrimination" (Claim 3);

"Further Reprisal for EEO Filing" (Claim 4)"; and "Higher Level Work, Reprisal, Inference with

work and Discrimination Based on Gender" (Claim 5).

Plaintiff's Complaint does not specifically identify Title VII of the Civil Rights Act of 1946, 42 U.S.C. § 2000e *et seq.*, as the statutory basis for her claims.  However, both parties agree in their briefs that Plaintiff is in fact seeking relief under Title VII.

Defendant, the FCC, filed a Motion to Dismiss in Part and Summary Judgment in Part. Specifically, Defendant moves to dismiss Counts One, Two, Four, and Five of Plaintiff's Complaint.  Defendant further seeks an entry of summary judgment as to Count III.  Plaintiff opposes Defendant's motion with respect to all Counts.  Defendant's motion is now ripe for the Court's review.

## II. LEGAL STANDARD

### A.  Motion to Dismiss

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court begins with the presumption that it does not have subject matter jurisdiction over a case.  *Id.*  To survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

Although *pro se* litigants are generally "held to less stringent standards than formal pleadings drafted by lawyers, they must still provide more than conclusory allegations to survive a motion to dismiss." *Lewis v. Bayh*, 577 F. Supp. 2d 47, 56 (D.D.C.2008) (internal citations omitted).

**B.  Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

The Court strictly adheres to the text of Local Civil Rule 7(h)(1), which requires that a party submitting a motion for summary judgment attach a statement of material facts as to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement. *See* LCvR 7(h)(1).  The party opposing such a motion must, in turn, submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation. *See id.*  Where the opposing party fails to discharge this obligation, a court may take all facts alleged by the movant as admitted. *Id.*  As the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has emphasized, "[Local Civil Rule 7(h)(1)] places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).  Here, Defendant submitted the required statement; however, Plaintiff, proceeding *pro se*, did not comply with Local Civil Rule 7(h)(1)'s requirement that the party opposing a motion for summary judgment submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation.  Instead, Plaintiff attached, as exhibits to her opposition brief, certain documentary evidence related to her claims, including deposition transcripts from the earlier EEO proceeding, emails related to the earlier EEO proceeding, and a performance review from the relevant time period. *See* Pl.'s Opp'n at 19-40 (Exhibits A-E).  Plaintiff attached the exhibits without indicating whether the exhibits were in opposition to Defendant's statement of material

facts, or whether they constituted Plaintiff's own statement of genuine issues.  In light of

Plaintiff's status as a *pro se* litigant, the Court, contrary to its preferred practice, shall in some

instances, cite directly to the exhibits on which Plaintiff relies in her opposition brief.  The Court

also notes that Plaintiff appears to only dispute Fact #5 in Defendant's Statement of Undisputed

Material Facts—that Plaintiff first initiated protected Equal Employment Opportunity activity on

October 4, 2012—and that she does not dispute the remaining four facts in Defendant's

statement.

## III. DISCUSSION

Defendant has filed a Motion to Dismiss in Part and Summary Judgment in Part.

Specifically, Defendant moves to dismiss Counts One, Two, Four, and Five of Plaintiff's

Complaint.  Defendant further seeks an entry of summary judgment as to Count III.  Plaintiff

opposes Defendant's motion with respect to all Counts.

### A.  Count One: Hostile Work Environment

Defendant moves to dismiss Plaintiff's hostile work environment claim on the basis that

Plaintiff fails to state a claim under Rule 12(b)(6).

To establish a prima facie Title VII hostile work environment claim, Plaintiff must show:

(1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3)

the harassment occurred because of her protected status; and (4) the harassment had the effect of

unreasonably interfering with the plaintiff's work performance and creating an intimidating,

hostile, or offensive working environment.  *See Davis v. Coastal Int'l Sec., Inc.,* 275 F.3d 1119,

1122–23 (D.C. Cir. 2002).  "Although a plaintiff need not plead a prima facie case of hostile

work environment in the complaint, the 'alleged facts must support such a claim.' " *McKeithan*

*v. Boarman,* 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (quoting *Middlebrooks v. Godwin Corp.,* 722 F. Supp. 2d 82, 90–91 & n. 6 (D.D.C. 2010)).

"To prevail on a hostile work environment claim, 'a plaintiff must show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment.' " *Baird v. Gotbaum,* 662 F.3d 1246, 1250 (D.C. Cir. 2011) (quoting *Baloch v. Kempthorne,* 550 F.3d 1191, 1201 (D.C. Cir. 2008). In making this determination, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch,* 550 F.3d at 1201. An "important factor in assessing whether harassment was sufficiently 'severe,' 'pervasive' and 'abusive' is whether the incidents of harassment are directed at others, rather than at plaintiffs." *Kelley v. Billington,* 370 F. Supp. 2d 151, 159 (D.D.C. 2005). This is because conduct directed at others is considered less hostile, *id.*, and because actions directed at others fails to satisfy that the hostile work environment be "linked to the plaintiff's gender." *Slate v. Public Defender Serv.*, 31 F. Supp. 3d 277, 306 (D.D.C. 2014).

Here, Plaintiff bases her hostile work environment claim on her allegations concerning the "systematic viewing of pornography" that allegedly occurred in the cubicle adjacent to her workspace. Plaintiff alleges that her immediate supervisor failed to act on, and protect her from, the viewing of pornography, despite her reporting of the behavior on multiple occasions. Compl. at 2. According to the Complaint, the pornography watching became so "severe and persuasive" that her coworker invited other males to join him in his cubicle. *Id.* Plaintiff alleges that she would "hear groans – mmm, mmm, ahh – in response to the pornography viewings," and that she feared for her safety because "[o]ne of the male viewers would stand guard looking for [her]."

*Id.* Plaintiff, citing deposition testimony that her supervisor admitted to having sex in his Federal office, states that she feels "unsafe, violated, petrified and dominated against these males in this sexually fueled and misogynistic Federal environment." *Id.*[4]

Defendant argues that Plaintiff fails to state a hostile work environment claim because the alleged pornography was not "directed at Plaintiff" in the precise manner that have recognized as violations of Title VII, such as where the pornography is displayed in common areas of the plaintiff's office environment, where the pornography is emailed to the plaintiff, or where it is placed on the plaintiff's desk.   Def.'s Mot. at 8 (citing *Yuknis v. First Student*, Inc., 481 F.3d 552, 553 (7th Cir. 2007); *EEOC v. Caterpillar Inc.*, 503 F. Supp. 2d 995, 1034, N.D. Ill. 2007;). Rather, Defendant argues that Plaintiff's Complaint alleges the "mere existence of pornography in the workplace," which, Defendant contends, is not sufficiently "severe or pervasive" to alter the conditions of employment. *Id.*  (citing *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 438-39 (N.D.N.Y. 2009).

Plaintiff, in her opposition brief, does not respond to Defendant's legal arguments, and instead recites allegations of fact, many of which are not contained within the Complaint and which have no apparent relevance to Plaintiff's hostile work environment claim.  *See* Opp'n at 4-6.   The Court cannot consider the factual allegations contained within Plaintiff's opposition brief that are absent from the Complaint.  *See Henthorn v. Dept't of the Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (explaining that "the sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a

---

[4] As additional evidence of the FCC's "pornography problem," Plaintiff's Complaint cites several news stories published in recent years. *See, e.g.*, Porn-surfing Feds Blame Boredom, Lack of Work for Misbehavior, http://www.washingtontimes.com/news/2014/jul/31/feds-accept-bordom-lack-of-work-as-excuses-for-sur?page=all (last visited on April 8, 2016).

12(b)(6) motion"). However, in light of the fact that Plaintiff is proceeding *pro se*, the Court will not treat Plaintiff's failure to respond to Defendant's arguments concerning the hostile work environment claim as a concession to Defendant's position. *See FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997) (noting that arguments not addressed in an opposition brief *may* be treated as conceded).

The Court finds it plausible that Plaintiff's employer subjected her to "discriminatory intimidation, ridicule, and insult" that is sufficiently "severe or pervasive" to alter the conditions of Plaintiff's employment and "creates an abusive working environment." *Baird*, 662 F.3d at 1250. Plaintiff alleges that the discriminatory conduct described in the complaint was not only frequent and offensive, but also interfered with her work performance, as she on numerous occasions heard groaning from the cubicle next to hers and felt intimidated by the group of men who would gather in close proximity to her office in order to view pornography. Furthermore, it is plausible that the hostile conduct could be considered to be "directed at Plaintiff," as one of the male viewers of the pornography would allegedly "stand guard looking for *her*." Compl. at 2 (emphasis added); *see also Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 84 (D.D.C. 2002) (finding that a jury could find harassment where the "ongoing harassing behavior" was directed at plaintiffs, but not at their male co-workers).

Additionally, Plaintiff does not allege the "mere existence of pornography in the work place," as Defendant contends. Indeed, the cases relied on by Defendant involve distinguishable situations where the plaintiff alleges a hostile work environment claim merely because coworkers watched pornography on their office computers, without any relation to the plaintiff's working environment. *See, e.g., Yuknis*, 481 F.3d at 555 ("The relation between the manager's watching pornography on his own screen and the plaintiff's working environment was almost as

attenuated as if she had learned that he watches pornography on his computer at home."). Rather, it is plausible that Plaintiff frequently had "no way to avoid" the groups of men watching pornography in the adjacent cubicle, and that she felt "surrounded by" the pornography being viewed nearby. *See O'Rourke v. City of Providence*, 235 F.3d 713, 722, 735 (1st Cir. 2001) (upholding jury verdict in favor of plaintiff's work environment claim where she routinely saw male coworkers watching pornographic movies in the common sitting area and had no way to avoid exposure to the pornography).

Accordingly, the Court finds that Plaintiff has pled sufficient facts in her Complaint to state a hostile work environment claim. *See id.*

## B. Count Two:  Gender Discrimination

Defendant moves to dismiss Plaintiff's hostile gender discrimination claim on the basis that Plaintiff fails to state a claim under Rule 12(b)(6).

To establish a gender discrimination claim under Title VII, Plaintiff must show that (1) she suffered an adverse employment action (2) because of her gender. *See Baloch*, 550 F.3d at 1196. As the D.C. Circuit has explained, "not everything that makes an employee unhappy is an actionable adverse action," because otherwise the courts would be called upon to mediate "even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (internal quotation marks and citations omitted).  "For discrimination claims, an action must, to qualify, be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird*, 662 F.3d at 1248 (citation omitted).  A "tangible employment action in most cases inflicts direct economic harm." *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009).

Here, the alleged acts of discrimination described in the Complaint are as follows:

1) Plaintiff's supervisor, Mr. Reed, allegedly called Plaintiff into "an illegitimate meeting" at which he called her "belligerent, angry, and hostile." Compl. at 3. Mr. Reed also allegedly "falsely insisted [Plaintiff] was his Assistant to the Director and responsible for doing his travel, scheduling, and administrative assignments" when those duties were actually the responsibility of a different, male employee. *Id.*

2) Mr. Reed allegedly "linked [Plaintiff] to his Federal work computer calendar" which caused Plaintiff to be "constantly bombarded with offensive unwelcomed email conversations of his personal life[.]" *Id.* at 3-4. These emails were related to Mr. Reed's "personal dating life [,] . . . his children's school schedules, performance struggles, medical appointments, [and] sporting events[.]" *Id.* at 4.

3) Mr. Reed allegedly "repeatedly emailed and accused [Plaintiff] of possessing the master office keys to his office and the OCBO at [her] home and cc'ed [her] lower and higher graded colleagues the emails containing his false accusation." *Id.* Mr. Reed "was motivated by forehand knowledge that [Plaintiff] was designated as a witness against him in his upcoming divorce proceeding." *Id.* Mr. Reed also allegedly targeted Plaintiff because she was "the sole employee designated [as] a witness to testify against him in his divorce proceeding." *Id.*

Defendant argues that none of the alleged acts rises to the level of an adverse employment action.[5]   The Court agrees.  First, the allegation that Mr. Reed called Plaintiff "belligerent, angry, and hostile" does not indicate a "significant change in employment status." *Baird*, 662 F.3d at 1248.  Furthermore, the D.C. Circuit has refused to find similar allegations of name-calling to constitute an adverse employment action for Title VII purposes. *Id.* at 1248-49 (allegations of "public humiliation" including being called "psychotic" did not rise to the level of adverse employment action).

---

[5] The Court notes that Plaintiff's opposition brief ignores Defendant's legal arguments as to her gender discrimination claim and instead describes factual allegations, many of which do not appear in the Complaint. *See* Opp'nj at 6-9.  For the same reasons described above in connection with the hostile work environment claim, the Court will disregard Plaintiff's newly proffered facts.  However, the Court will not treat Defendant's arguments as conceded.

Furthermore, Plaintiffs' allegation that Mr. Reed told Plaintiff she was responsible for certain administrative assignments, Compl. at 3, does not demonstrate an adverse action. Plaintiff does not allege that she was ever reassigned to the administrative duties, and even if she had been reassigned, "changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997); *see also Childers v. Slater*, 44 F. Supp. 2d 8, 19 (D.D.C. 1999) ("Mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action."). In addition, Plaintiff cannot base her claim on her allegation that Mr. Reed "threatened [Plaintiff's] job security," Compl. at 3, as the "D.C. Circuit has repeatedly held that mere threats of termination do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm." *Weng v. Solis*, 960 F. Supp. 2d 239, 250 (D.D.C. 2013) (citing *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *Lutkewitte v. Gonzales*, 436 F.3d 248, 271 (D.C. Cir. 2006)).

Plaintiff also alleges that her supervisor, Mr. Reed, falsely accused Plaintiff "of possessing the master office keys." Compl. at 4. However, an accusation of possible misconduct without more is simply not "a tangible employment action constitut[ing] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and therefore cannot be an adverse personnel action." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1994); *see also Forkkio*, 306 F.3d at 1131. In addition, Plaintiff does not plausibly allege that the challenged action occurred because of her gender. According to the Complaint, Plaintiff's supervisor, Mr. Reed, "was motivated by forehand knowledge that [Plaintiff] was designated as a

witness against him in his upcoming divorce proceeding." Compl. at 4.  Accordingly, there is no

factual basis to conclude that Mr. Reed falsely accused Plaintiff "of possessing the master office

keys" because of her gender.  *See Baloch*, 550 F.3d at 1196.

Accordingly, the Court finds that Plaintiff fails to state a gender discrimination claim

under Rule 12(b)(6).

### C.  Count Three:  Retaliation Claim Based on Plaintiff's Non-Receipt of Awards for Fiscal Year 2012

Defendant moves for summary judgment on Plaintiff's retaliation claim in which Plaintiff

alleges that her supervisor, Mr. Reed, failed to award Plaintiff any financial awards for fiscal year

2012.  *See* Def.'s Mot. at 14-.15.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that she

engaged in a protected activity and that her employer took materially adverse action against her

because she engaged in that protected activity.  *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C.

Cir. 2013); *see also McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) ("To prove

unlawful retaliation, a plaintiff must show:  (1) that he opposed a practice made unlawful by Title

VII; (2) that the employer took a materially adverse action against him; and (3) that the employer

took the action 'because' the employee opposed the practice.").  As to protected activity, a

plaintiff must show that she "opposed any practice" made unlawful by Title VII or 'made a

charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  *Manuel v.*

*Potter*, 685 F. Supp. 2d 46, 55 (D.D.C. 2010) (citing 42 U.S.C. § 2000e-3(a); *Burlington N. &*

*Santa Ge Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In the Complaint, Plaintiff alleges that she was singled out by Mr. Reed in 2012 after she

began pursuing an EEO action against him that same year.  *Id.* at 4.  Plaintiff contends that she

was the "sole employee [in her] office that failed to receive any awards or merit increases" for

Fiscal Year 2012.  *Id.* at 4-5.

      In moving for summary judgment, Defendant attaches a declaration of Plaintiff's

supervisor, Mr. Reed, in which he states that he made the determination as to who should receive

performance awards on August 14, 2012, and that the 2012 performance awards were issued by

the FCC in September 2012.  *See* ECF No. [7-1] ¶ 5.  Defendant argues that Plaintiff cannot

establish a causal link between her alleged protected activity and the alleged adverse action

because Plaintiff did not file her informal EEO complaint against Mr. Reed until October 15,

2012.  *See* Def.'s Mot. at 15; Compl. at 4.

      In opposition, Plaintiff argues that she engaged in EEO protection beginning in March

2012.  *See* Pl.'s Opp'n at 10.  Plaintiff attaches email records indicating that on March 8, 2012,

she emailed Mr. Thomas Wyatt, Director of the FCC's Office of Workplace Diversity, requesting

a meeting to discuss "long term higher graded duties assigned to and undertaken by me; non-

management and a recent hate crime imposed upon my vehicle by employee(s) of the CBO for

an incident that initiated in the office."  *See id.* at 32 (Exhibit C).  The email also indicates that

Plaintiff had spoken with him previously, and that "Security, IG, and Labor Relations" were

involved in the situation.  *Id.*  Plaintiff also attaches a copy of another email between Plaintiff

and Mr. Wyatt, dated August 6, 2012, with subject line, "Available to Meet Now," in regard to an

undisclosed topic.  *Id.* at 33 (Exhibit C).

      Plaintiff contends that she would "have received an award or merit increase", but for Mr.

Reed's "unlawful retaliation in response to her established protected activity meetings that

occurred shortly prior to his determination of who would receive an award."  *See id.* at 10.

Plaintiff attaches a performance review from June 28, 2012, in which Mr. Reed issued a signed

"Pass" performance rating to Plaintiff for Fiscal Year 2012, and certified that she "passed" the Critical Performance Core Competencies in "all" categories. *See id.* at 36-37 (Exhibit C). Plaintiff also attaches a transcript of Mr. Reed's deposition from 2014, in which he stated that he gave all employees, except for Plaintiff, awards for Fiscal Year 2012. *See id.* at 21-24 (Exhibit A).

In reply, Defendant puts forward an amended argument in favor of its summary judgment motion on this claim: the emails submitted by Plaintiff do not establish that Plaintiff opposed any practice made unlawful by Title VII or participated in protected activity. *See* Def.'s Reply at 5. Defendant attempts to cast Plaintiff's grievances as an "ambiguous complaint," which did not make the employer aware of the alleged discriminatory misconduct." *Id.* at 6.

The Court finds Defendant's argument unavailing. Defendant has provided no factual basis to conclude that Plaintiff undisputedly did not engage in protected activity in her communications with Mr. Wyatt, the Director of the FFC's Office of Workplace Diversity. Furthermore, Defendant provides no legal support for the conclusion that Plaintiff did not engage in protected activity simply because "Plaintiff did not assert any violation of Title VII in her email correspondence." Def.'s Reply at 7. At this stage in the case, the parties have yet to undertake any discovery, and there is no record to clearly ascertain what exactly Plaintiff complained of to Mr. Wyatt, or what, if any, activities or procedures occurred subsequent to Plaintiff's communications with Mr. Wyatt. Accordingly, the Court finds that there remain disputed facts as to whether Plaintiff's activities constitute "protected activities" under Title VII. The Court also notes that there remain disputed facts as to whether Mr. Reed knew about Plaintiff's apparent complaints to the FCC's Office of Workplace Diversity, and whether he "took materially adverse action against her" because she engaged in such activities.

Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's retaliation claim concerning her non-receipt of awards for Fiscal Year 2012.

**D. Count Four:  Retaliation Claim Based on  Plaintiff's Meeting with Plaintiff's Second-Level Supervisor, Ms. Fleming-Williams**

Defendant moves to dismiss Plaintiff's second retaliation claim, in which Plaintiff alleges that after she filed her informal EEO complaint against Mr. Reed, Plaintiff's second-level supervisor, Ms. Fleming-Williams, called her into a "reprisal meeting" and "harassed" her with "fabrications" that Plaintiff had not been communicating with Ms. Fleming-Williams and that there were problems with Plaintiff's work on the "Section 610 Report."  Compl. at 5.  According to the Complaint, Ms. Fleming-Williams questioned Plaintiff regarding the EEO claim and threatened Plaintiff to reconsider her career goals.  *Id.*

Defendant contends that the alleged comments by Ms. Fleming-Williams do not constitute adverse actions for the purpose of Plaintiff's retaliation claim.  *See* Def.'s Mot. at 15.[6] The Court agrees.   It is well settled that "false accusations without negative employment consequences are not employment decisions actionable under Title VII."  *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) (citation omitted).   Similarly, "formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary or other benefits, do not constitute adverse employment actions."  *Id.*  Even though Plaintiff alleges that Ms. Fleming-Williams "yelled" at her, the D.C. Circuit has explained that "sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims."  *Baloch*, 550

---

[6] The Court notes that Plaintiff's opposition brief largely ignores Defendant's legal arguments as to this retaliation claim and instead describes factual allegations, many of which do not appear in the Complaint.  *See* Opp'nj at 6-9.  For the same reasons described above in connection with the hostile work environment claim, the Court will disregard Plaintiff's newly proffered facts. However, the Court will not treat Defendant's arguments as conceded.

F.3d at 1199 (declining to find "profanity-laden yelling" to constitute an actionable adverse action and holding that threatened suspension was not materially adverse where the suspension was not carried out).

In sum, Plaintiff has not alleged that the comments by Ms. Fleming-Williams "in any way affected her job performance ratings or the conditions of her employment.  Because [the] comments had no effect on [Plaintiff's] pay, benefits, or privileges, [they] cannot be considered an adverse employment action under Title VII."  *Stewart*, 275 F.3d at 1136.

Accordingly, the Court finds that Plaintiff fails to state a retaliation claim based on Plaintiff's meeting with Ms. Fleming-Williams.

### E.  Count Five:  Plaintiff's Claim based on her Duties regarding the "Section 610" Report

Lastly, Plaintiff includes a claim titled "Higher Level Work, Reprisal, Inference [sic] with work and Discrimination Based on Gender."  Compl. at 6.  The parties do not dispute that through the allegations in Count Five, Plaintiff seeks to bring "a discrimination claim based on failure to promote," as well as a retaliation claim.  *See id.* at 17-19; Pl.'s Opp'n at 13-15.

#### 1.  Discrimination Claim based on Failure to Promote

First, Plaintiff alleges that "[s]ince 2004," she had "been performing the delegated duties of the Section 610 Report," which had previously been performed by a male GS-14 attorney.  *Id.* Plaintiff, promoted to GS-12 in 2010, claims that a GS-12 salary was "still not adequate rate compensation."  *Id.*  According to the Complaint, Plaintiff requested that she be compensated at a rate at least commensurate for her work on the Section 610 Report, but that her supervisors disputed Plaintiff' contentions that she was performing the higher level work.  *Id.*

Defendant moves to dismiss the non-promotion claim for failure to state a claim and for failure to adequately exhaust the claim.  *See* Def.'s Mot. at 17.  Defendant argues that Plaintiff's

non-promotion claim fails because Plaintiff does not allege the existence of any available position to which she applied, nor does she allege that she requested a desk audit,[7] or that her GS-12 position had any promotion potential.  *Id.* at 18.  Instead, Plaintiff alleges only that she demanded more money:  "I requested of my managers to be compensated at the GS-13 level[.]"  *Id.* (quoting Compl. at 6).  Defendant also argues that Plaintiff appears to be challenging the insufficiency of a promotion that occurred in 2010, but that she did not seek EEO counseling until October 2012—long after the applicable 45-day deadline under Title VII.  *See id.* at 19.

In response, Plaintiff argues that an accretion of duties—the upgrading of an employee's position because of additional duties and responsibilities—is another method of achieving promotion.  *See* Pl.'s Opp'n at 13-15.  Plaintiff also contends that she requested to be *promoted*, not simply that she "demanded more money," citing her allegation in the Complaint that her promotion in 2010 to GS-12 status was not adequate because she "lead[s] the coordination of the Section 610 Report, and was the lowest paid in [] the Agency's Bureau and Offices."  *Id.* at 14; Compl. at 6.  Plaintiff contends that the promotion to the GS-12 grade level was insufficient because she absorbed certain duties regarding the Section 610 Reports upon the retirement of the GS-14 male attorney who previously was responsible for the Section 610 Reports.  *See* Pl.'s Opp'n at 12.

At the outset, the Court notes that Defendant has not shown that Plaintiff has failed to exhaust her administrative remedies in a timely manner.  At the time that Plaintiff filed her

---

[7] "A desk audit is a process by which an employee may request 'her work to be reviewed.' " *Rand v. Secretary of the Treasury*, 816 F. Supp. 2d 70, 72 n.1 (D.D.C. 2011) (quoting *Williams v. Dodaro*, 806 F. Supp. 2d 246, 249 n. 2 (D.D.C. 2011)).  " '[I]f, in the eyes of the reviewers, that work is at a level higher than that at which the employee is currently graded, the employee will be promoted to the level' that is reflected by her performance." *Id.*  "This is sometimes called an 'accretion of duties' promotion, because the desk audit is meant to trigger a promotion to match the employee's 'accretion of duties' over time." *Id.*

informal EEO complaint in October 2012, she was responsible for the Section 610 Reports, and believed that her responsibilities were sufficient to warrant a promotion to the GS-13 level at that time. Accordingly, the Court finds that Defendant has not met its burden of demonstrating that Plaintiff has failed to exhaust her administrative remedies in a timely manner, and shall proceed to the merits of Plaintiff's non-promote claim. *See Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 119 (D.D.C. 2014), *aff'd*, No. 14-5156, 2016 WL 1319727 (D.C. Cir. Apr. 5, 2016) (evaluating merits of non-promotion claim under an "accretion of duties" theory, where the plaintiff believed that he was qualified for a promotion in grade and salary within his own position).

Where, as here, a plaintiff claims that she was denied a promotion in grade and salary within his own position (rather than into a vacant position), to establish a prima facie case he "must show [1] that she sought and was denied a promotion [2] for which she was qualified, and [3] that 'other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied.' " *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)).

As to the first factor, Plaintiff cannot show that she sought or was denied a promotion because it is undisputed that she never requested a desk audit, a necessary step for a "promotion resulting from an employee's position being classified at a higher grade level because of additional duties and responsibilities." 5 C.F.R. § 335.103(c)(3)(ii). Courts have repeatedly held that a plaintiff's "failure to request a desk audit that could lead to a promotion condemns h[er] . . . non-promotion claim to failure." *Burton v. Batista*, 339 F. Supp. 2d 97, 15 (D.D.C. 2004); *see also Marshall v. Shalala*, 16 F. Supp. 2d 16, 20 (D.D.C. 1998), *aff'd*, No. 98-5488, 1999 WL 229010 (D.C. Cir. Mar. 2, 1999). Furthermore, courts have also rejected the argument that a plaintiff "should not have to show that he sought a promotion because the grade increase in

question was not competitive, but rather 'in-position' based on an 'accretion' of duties." *Nurriddin*, 40 F. Supp. 3d at 120 (D.D.C. 2014), *aff'd*, 2016 WL 1319727 (D.C. Cir. Apr. 5, 2016).

Second, even if Plaintiff had followed the necessary steps for a promotion, Plaintiff has not shown that she was qualified for a GS-13 position.  Plaintiff only alleges that she "perform[ed] the delegated duties of the Section 610 Report" that were previously performed by a GS-14 male, Attorney-Advisor.  Comp. at 6.  However, "[e]ven assuming that she performed all the duties she claims to have performed" on the Section 610 Reports, she "has not demonstrated that such duties were sufficient to support a promotion in grade or salary." *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 157 (D.D.C. 2007) (dismissing discriminatory accretion of duties claim where GS-13 plaintiff "assumed [a GS-14 predecessor's] duties" for one project, but "never ma[de] any argument that she took over [the GS-14 employee's] duties [on other assignments]).  Plaintiff also has not established that she was qualified for a GS-13 position because Plaintiff has not alleged "that all of her responsibilities were [GS-13] responsibilities." *Id.*

Third, Plaintiff has not alleged "that h[er] employment situation was similar in all relevant aspects to any individual [she] seeks to use for comparison." *Nurriddin*, 40 F. Supp. 3d at 121, *aff'd*, 2016 WL 1319727 (D.C. Cir. Apr. 5, 2016).  Here, Plaintiff does not allege that any comparator exists during the relevant time period.  Plaintiff cannot rely on the male attorney as a comparator because she cannot claim that "all of the relevant aspects of [her] employment situation were nearly identical to [his]." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999); *see also Kilby-Robb*, 522 F. Supp. 2d at 158-59.

24

Accordingly, the Court finds that Plaintiff fails to state a non-promotion claim based on accretion of duties.

2. Retaliation Claim

Finally, Plaintiff alleges a retaliation claim based on the removal of her duties as to the Section 610 Reports.  Plaintiff contends that subsequent to Plaintiff's filing of the EEO complaint, Ms. Fleming-Williams met with Human Resources and "immediately removed [Plaintiff's] substantive duties in connection with the Section 610 and ultimately [Plaintiff's] entire duties" as to the Section 610 Reports.  Compl. at 6.  Plaintiff alleges that Ms. Fleming-Williams took away these responsibilities because the responsibilities were a component of the EEO complaint.  *Id.*  According to the Complaint, the Section 610 Reports for 2011, 2012, 2013, and 2014 have not been completed by anyone else in the office.  *Id.*

Defendant moves to dismiss Plaintiff's retaliation claim, on the basis that "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes."  *Mungin*, 116 F.3d at 1557.  Defendant argues that the alleged change in Plaintiff's duties regarding the Section 610 Reports does not constitute an "adverse employment decision."  The Court agrees.

This circuit's standard for an adverse employment action is well-established:  "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  *Czekalski v. LaHood*, 589 F.3d 449, 454 (D.C. Cir. 2009) (quoting *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002).  In other words, changes in duties or working conditions, including reassignments that do not have a tangible effect on the terms, conditions or privileges of

employment are not adverse actions.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998).

Here, Plaintiff does not allege that she has experienced any materially adverse consequences that affect the terms, conditions, or privileges of her employment or future employment opportunities.  *See LaHood*, 589 F.3d at 454.

In light of the foregoing, the Court finds that Plaintiff fails to state a retaliation claim based on the removal of her duties as to the Section 610 Reports.

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT IN PART and DENY IN PART Defendant's Motion.  The Court grants Defendant's motion to dismiss with respect to Count Two (gender discrimination), Count Four (retaliation) and Count Five (gender discrimination and retaliation).  The Court denies Defendant's motion to dismiss Count One (hostile work environment) and denies Defendant's motion for summary judgment on Count Three (retaliation).

An appropriate Order accompanies this Memorandum Opinion.

        _____/s/_____
        COLLEEN KOLLAR-KOTELLY
        United States District Judge