**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHARON K. STEWART,<br>    Plaintiff,<br><br>    v.<br><br>FEDERAL COMMUNICATIONS<br>COMMISSION,<br>    Defendant. | Civil Action No. 15-57 (CKK) |

**MEMORANDUM OPINION**
(September 29, 2017)

Plaintiff Sharon Stewart is a Women's Outreach Specialist in the Office of

Communication Business Opportunities ("OCBO") at the Federal Communications Commission

("FCC"). Plaintiff contends that she was subjected to a hostile work environment because a male

colleague in an adjacent cubicle viewed pornographic images on his work computer. She also

alleges that her supervisors retaliated against her for filing Equal Employment Opportunity

("EEO") complaints by removing one of her most substantive duties and by denying her

bonuses. Plaintiff brings this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq*. Defendant has moved for summary judgment.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a

whole, the Court shall GRANT-IN-PART and DENY-IN-PART Defendant's [41] Motion for

---

[1] The Court's consideration has focused on the following documents and their attachments and/or
exhibits: Def.'s Mot. for Summary Judgment, ECF No. 41 ("Def.'s Mot."); Pl.'s Mem. in Opp'n
to Def.'s Mot. for Summary Judgment, ECF No. 42 ("Pl.'s Opp'n"); and Def.'s Reply in Support
of Mot. for Summary Judgment, ECF No. 47 ("Def.'s Reply"). In an exercise of its discretion, the

Summary Judgment.  First, the Court grants Defendant's motion and enters summary judgment in its favor with respect to Plaintiff's hostile work environment claim.  This claim fails because Plaintiff has not adduced evidence that the incidents of pornography viewing she complains of were directed at her, occurred because of her protected status, or were intended to discriminate against women more generally.  Second, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliation claims regarding her failure to receive bonuses in 2012 and 2015.  Plaintiff has not satisfied her burden of establishing that the non-retaliatory reasons Defendant has proffered for denying Plaintiff bonuses in those years were pretext for retaliation.  Finally, the Court will deny Defendant's motion for summary judgment on Plaintiff's retaliation claims with respect to the alleged removal of Plaintiff's duties on so-called "Section 610 Reports."  Genuine disputes of material fact exist regarding whether the removal of these duties constituted an adverse action and whether Defendant's proffered rationale for their removal was pretext for retaliation.

## I.  BACKGROUND

### A. Plaintiff's Colleague Views Pornography on a Work Computer

Beginning in 2009, Plaintiff observed her male co-worker, John Finnie, viewing pornographic images on his office computer.  Depo. of Sharon Stewart, ECF No. 41-2 ("Stewart Depo.") at 69:5-7.  Plaintiff and Mr. Finnie worked in adjoining cubicles.  *Id*. at 283:11-15.  According to Plaintiff, she on several occasions walked by and "caught" Mr. Finnie viewing the pornographic images.  *E.g.*, *id*. at 82:20-83:1.  On some occasions, Mr. Finnie would click out of the images when Plaintiff walked by; on others, he would be in a "deadlock stare," and would

---

Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

not click out because he was unaware of Plaintiff's presence. *Id*. at 70:5-11. Mr. Finnie never asked Plaintiff to look at the images, or otherwise shared or distributed them to her. *Id*. at 83:20-84:13. Plaintiff and Mr. Finnie had altercations in which Plaintiff accused him of watching pornography, and Mr. Finnie denied doing so. *Id*. at 66:14-19; 97:2-6.

In 2012, up to four other men joined Mr. Finnie in his office to view pornographic images. *Id*. at 87:12-23, 95:7-14. This happened approximately three times. *Id*. Plaintiff claims that she observed the group viewing when she walked past Mr. Finnie's cubicle, and also that she heard "moans and groans" emanating from his cubicle. *Id*. at 89:6-18. According to Plaintiff, one of the male viewers would "stand guard" and look for her. *Id*. at 103:6-14. Plaintiff does not know why he would do so. *Id*. at 103:15-19. Plaintiff allegedly reported this conduct to her supervisor Mr. Reed for the first time in September 2009.[2] *Id*. at 104:14-18. Asked why she thought Mr. Reed took no ameliorative actions, Plaintiff testified that it was "because he was having sex in the office himself." *Id*. at 111:5-7. It is undisputed that Mr. Reed did have sex in his FCC office. Pl.'s Stmt. of Disputed Facts, ECF No. 42-1 ("Pl.'s Stmt."), ¶ 28.

In August 2015, the Office of Inspector General ("OIG") issued a report finding evidence that Mr. Finnie "used an FCC computer to view and store pornographic material . . . ." Pl.'s Ex. 3, ECF No. 42-5 (OIG Report). Despite Mr. Finnie's conduct, Plaintiff does not have any personal animosity toward Mr. Finnie or the other men who joined him in his office. Stewart Depo. at 93:2-4.

---

[2] The Court notes that Mr. Reed disputes this fact, among others.

**B. Plaintiff Does Not Receive a Bonus in 2012**

In early 2012, hostilities arose between Plaintiff and some of her colleagues. Def.'s Stmt. of Undisputed Material Facts, ECF No. 41 ("Def.'s Stmt.") ¶¶ 6-7; Stewart Depo. at 33:14-38:20. These disputes reached a tipping point for Plaintiff when she accused her colleagues of slashing her tires when her car was parked outside of her home. Stewart Depo. at 50:18-22. Plaintiff became extremely frustrated with Mr. Reed when he failed to take action against her colleagues. Def.'s Stmt. ¶¶ 7-9; Stewart Depo. at 50:18-55:22, 137:3-141:7.

In late February and early March of 2012, Plaintiff scheduled meetings with individuals at the OIG, the FCC's Office of Labor Relations and the FCC's Office of Workplace Diversity. Pl.'s Stmt. ¶¶ 40-42. Plaintiff claims that at these meetings she reported Mr. Finnie's viewing of pornography at his cubicle, claimed that she was being subjected to a hostile work environment, and generally faulted Mr. Reed for her workplace problems. *Id.*

On March 15, 2012, Mr. Reed called Plaintiff into his office for a meeting. Def.'s Stmt. ¶ 10. Exactly what was said at that meeting is disputed, but there is no genuine dispute that Plaintiff was upset, used profanity, and told Mr. Reed that she no longer wanted to perform certain work for him. *Id.* ¶ 11. Plaintiff herself testified that she "expressed frustration," used the word "shit" and told Mr. Reed during this meeting that she did not want to work on his travel authorizations anymore. Stewart Depo. at 57:9-58:16; 154:15-155:23.

On April 4, 2012, Mr. Reed issued Plaintiff an oral admonishment confirmed in writing for her conduct in the March 15 meeting. Def.'s Stmt. ¶ 13; Def.'s Ex. G, ECF No. 41-8 (April 4, 2012 Memorandum from Thomas Reed to Sharon Stewart re Oral Admonishment Confirmed in Writing). The admonishment stated that Plaintiff became "very angry, hostile, and belligerent towards" Mr. Reed in the meeting, "used inappropriate language," was "insulting and critical of

[Mr. Reed] and questioned [his] character and [his] ability as an FCC manager," and stated "you are not my boss; I will not work for you."  *Id.*

Plaintiff administratively appealed the admonishment, but it was upheld.  Def.'s Stmt. ¶ 14.  The appellate authority found that, among other things, Plaintiff had admitted that during the March 15 meeting she said "I'm sick of this going thru this shit" and that Mr. Reed had, in response, "advised her to watch her language."  Def.'s Ex. H, ECF No. 41-9 (April 3, 2012 Memorandum from Suzanne M. Tetreault to Sharon Stewart re Decision on Appeal from Grievance Denial at First Step).

Plaintiff did not receive an OCBO "performance award" in 2012.  Def.'s Stmt. ¶ 15.  All other OCBO employees received a bonus that year, and Plaintiff received bonuses in all prior years.  Pl.'s Stmt. ¶ 52.  Under FCC rules, employees have no entitlement to such awards, which are made at the discretion of the employer.  Def.'s Ex. T, ECF No. 41-21.

## C. Plaintiff's Duties with Respect to Section 610 Reports

One of Plaintiff's duties at the OCBO beginning in 2004 was to assist an attorney with "Section 610 Reports."  Def.'s Stmt. ¶ 17.  Section 610 Reports are lists of certain agency rules that are ten years old and significantly affect small entities.  *Id.* ¶ 18.  They are issued annually. *Id.*; Pl.'s Stmt. ¶ 54-57.  The parties dispute the importance of these reports.  Defendant characterizes the reports as a mere "list of rules" with "boilerplate language," and describes Plaintiff's contribution as simply soliciting and compiling submissions from other offices, formatting the list and inputting basic edits.  Def.'s Stmt. ¶¶ 19-20.

Plaintiff, on the other hand, argues that her work on these reports was a "major part" of her duties and that she "led the coordination" of, or "took over the responsibility" for, the reports.  Pl.'s Stmt. ¶¶ 58, 59, 62.  Plaintiff notes that before she took over her responsibilities

with respect to the Section 610 Reports, these duties were handled by a more senior FCC employee. *Id.* ¶ 62. She also claims that she had conversations with her supervisors about getting a promotion on the basis of her work on the reports. Pl.'s Stmt. ¶¶ 69-76.

On October 15, 2012, Plaintiff filed an EEO complaint alleging various acts of discrimination and retaliation. On October 18, 2012, one of Plaintiff's supervisors, Ms. Carolyn Fleming-Williams, held a meeting with Plaintiff. Pl.'s Stmt. ¶ 63. Plaintiff claims that at that meeting Ms. Fleming-Williams asked Plaintiff why she had filed her complaints and sought to dissuade her from pursuing them. *Id.* She then told Plaintiff that there were "problems" with Plaintiff's work on the 2011 Section 610 Report. *Id.* ¶ 64. After this meeting, although Plaintiff corrected the problems Ms. Fleming-Williams raised, the 2011 report nonetheless remained unpublished until mid-2016, depriving Plaintiff of any work on Section 610 Reports for a number of years. *Id.* ¶ 65.

### D. Plaintiff Does Not Receive a Bonus in 2015

In early 2015, Mr. Reed proposed a seven day suspension without pay for Plaintiff for "failure to complete a work assignment" and "lack of candor" on the grounds that she failed to provide him with a "master contact list" she maintained when requested. Def.'s Stmt. ¶¶ 38-40; Def.'s Ex. L, ECF No. 41-13 (January 16, 2015 Letter from Thomas Reed to Sharon Stewart re Notice of Proposed 7-Day Suspension). Mr. Reed sent Plaintiff an email requesting that document on August 6, 2014. Def.'s Ex. V, ECF No. 41-23 (August 6-7, 2014 email chain between Thomas Reed and Sharon Stewart). Plaintiff responded that she did not have the document. *Id.* Mr. Reed followed up multiple times asking for the document, suggesting that Plaintiff did have the document, that he recalled her having it, and that others confirmed that she had it. *Id.* Plaintiff repeatedly refused to provide the document. *Id.* The list was later found on

Plaintiff's computer by the Office of Information Technology ("OIT"). Def.'s Stmt. ¶ 39. Plaintiff claims that she did not remember having the list, and that at the time it was requested, she no longer was assigned to maintain it. Pl.'s Stmt. ¶¶ 80, 82-84. She concedes, however, that she "did not look for the document." Stewart Depo. at 192:12-14.

The official in charge of deciding Plaintiff's ultimate punishment, Mindy J. Ginsburg, later found that the record did not support a seven day suspension, and instead issued a Letter of Counseling. Pl.'s Stmt. ¶ 81; Def.'s Ex. M, ECF No. 41-14 (March 2015 Letter from Mindy J. Ginsburg to Sharon Stewart re Notice of Decision on Proposal for a 7-Day Suspension and Letter of Counseling for Failure to Complete a Work Assignment). The official found that Plaintiff "did not take meaningful steps to attempt to comply with [her supervisor's] request," and was "generally uncooperative." Def.'s Ex. M. However, Ms. Ginsburg found that mitigating circumstances warranted downgrading the penalty from a suspension to a letter of counseling. *Id.* Ms. Ginsburg did not sustain the lack of candor charge. *Id.*

Plaintiff did not receive a bonus in 2015. Def.'s Stmt. ¶ 42.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Be that as it may, the plaintiff is not relieved of her burden to support her allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage she bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III. DISCUSSION

#### A. Hostile Work Environment

Plaintiff alleges that the viewing of pornographic images by Mr. Finnie and others subjected her to a hostile work environment. Am. Compl., ECF No. 35, Count I. The complaint alleges that the viewing constituted harassment and that the "harassment was sexual in nature, and targeted Ms. Stewart based on her sex (female)." *Id.* ¶ 37.

To establish a prima facie Title VII hostile work environment claim, Plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment;

(3) the harassment occurred because of her protected status; and (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment. *See Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122-23 (D.C. Cir. 2002). "To prevail on a hostile work environment claim, 'a plaintiff must show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment.'" *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). In making this determination, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. An "important factor in assessing whether harassment was sufficiently 'severe,' 'pervasive' and 'abusive' is whether the incidents of harassment are directed at others, rather than at plaintiffs." *Kelley v. Billington*, 370 F. Supp. 2d 151, 159 (D.D.C. 2005). That is because conduct directed at others is considered less hostile, *id.*, and because actions directed at others fails to satisfy the requirement that the hostile work environment be "linked to the plaintiff's gender." *Slate v. Pub. Def. Serv.*, 31 F. Supp. 3d 277, 306 (D.D.C. 2014).

Plaintiff's claim fails because she has not adduced evidence that the incidents of pornography viewing described above were directed at her, or that they "occurred because of her protected status." Put differently, there is no evidence that the viewing of pornography was intended to harass Plaintiff, harass her *as a woman*, or that this conduct was motivated by gender-based discrimination. *See Baloch*, 550 F.3d at 1201 ("In this case, none of the comments or actions directed at Baloch expressly focused on his race, religion, age, or disability—unlike in

some hostile work environment cases."); *Walston v. Foley & Lardner, LLP*, 516 F. App'x 1 (D.C. Cir. 2013) (affirming summary judgment in favor of defendant because plaintiff "offered no evidence to suggest that the alleged harassment was motivated by racial discrimination"). Indisputably, numerous cases in the Title VII context have found that severe and overt displays of pornography in the workplace can engender a sex-based hostile work environment. But a unifying theme of these cases is that: (i) the manner in which the pornography was displayed evidenced an intent to harass the female plaintiff, or (ii) the pornography was coupled with other overt acts of gender-based discrimination. *See Williams v. CSX Transp. Co.*, 533 F. App'x 637, 643 (6th Cir. 2013) ("Although it is true that pornography displayed in the workplace, even if not directed to one individual specifically, may contribute to a hostile work environment for women generally, all of the cases Williams cites in which courts have found a genuine question of material fact as to sexually hostile environment feature not only sometimes-visible pornography in the workplace, but additional conduct more severe or pervasive than in the present case." (internal quotation marks and citation omitted)) (collecting cases). Here, there is no evidence that Mr. Finnie or the other men who viewed pornography in his cubicle made any sexist remarks or otherwise engaged in any discriminatory conduct with respect to Plaintiff. Consequently, the focus in this case is squarely on the context in which the pornography was displayed, and whether the evidence suffices to show that the display was discriminatory in nature and thereby engendered a hostile work environment.

A similar issue was assessed in *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007). In that case, the defendant argued that plaintiff failed to state a claim because she had "not alleged that the harassing conduct was *aimed at her*—let alone aimed at her *because of her sex*." *Id*. (emphasis in original). Plaintiff claimed that her supervisor watched pornographic videos; that

11

she was "was regularly required to handle pornographic videotapes in the course of performing her employment responsibilities of opening and delivering [the supervisor's] mail; and that she once discovered hard core pornographic websites that [the supervisor] viewed on *her* workplace computer." *Id*. (emphasis in original). The Second Circuit found that while pornography could be equally offensive to men and women, it could still amount to gender-based discrimination if it was "intended to provoke Plaintiff's reaction as a women." *Id*. at 115. This conclusion was based on the holding in *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 32 (4th Cir. 2003) (*en banc*). There, the Fourth Circuit upheld a jury-verdict on the "because of sex" element because the jury could have found that "much of the sex-laden and sexist talk and conduct in the production shop was aimed [at plaintiff,]" and that the "men behaved as they did to make her uncomfortable and self-conscious as the only woman in the workplace." *Id*. at 332.

Applying these principles to the factual question at hand, it is clear that sometimes the viewing of pornography by men in the workplace is intended to serve as an instrument of discrimination against women. The conduct in such cases, while perhaps offensive to both genders, serves to intentionally provoke, intimidate and ostracize a female colleague. The hallmarks are that the viewing is overt and unrepentant, and comingled with other offensive conduct aimed at women. *See, e.g., Petcou v. C.H. Robinson Worldwide, Inc.*, No. 1:06-CV-2157-HTW-GGB, 2008 WL 8910651, at *2 (N.D. Ga. Feb. 5, 2008) (finding that the plaintiffs "presented sufficient evidence for a jury to find that they were subjected to a hostile work environment because of their sex" where the overall workplace atmosphere was "male-dominated," and involved exposure to sexually explicit images on male co-workers' computer screens "[o]n almost a daily basis" depicting women "who often appeared in compromising positions or engaged in sex acts," combined with "offensive language and explicit descriptions of

the sexual exploits of their male counterparts" and "offensive" and "sexist" comments specifically directed at plaintiffs); *Brinkley v. City of Green Bay*, 392 F. Supp. 2d 1052, 1061 (E.D. Wis. 2005) ("But plaintiff's claim is not that her co-workers simply possessed pornographic materials for their own viewing. Her complaint is that pornographic magazines and other materials were kept in the common areas, especially in the bathrooms that she was required to use, and were plainly visible to her and other women firefighters. She also claims that when she complained about it, pornographic magazines were left open on the floor in the woman's bathroom with bottles of lotion along side."); *Williams v. City of Chicago*, 325 F. Supp. 2d 867, 876 (N.D. Ill. 2004) ("Williams' claim, however, is not limited solely to pornography in the workplace. A co-worker showed her a picture of a female arrestee and asked her if she thought the woman 'took it up the ass,' and other colleagues laughed at her when she found a picture of a vagina on a general-use computer.").

Conversely, the record in this case, even when viewed most favorably to Plaintiff, does not evidence that Mr. Finnie or his counterparts viewed or displayed pornographic images in a manner that was intended to target Plaintiff, to target Plaintiff as a woman, or to discriminate against women more generally. Plaintiff testified that Mr. Finnie denied watching pornography, and that he would close out of the images when he noticed her presence. On the occasions when he failed to do so, it was because he did not notice her. Even Plaintiff describes herself as "catching" Mr. Finnie viewing the images. There is no record evidence that Mr. Finnie or his counterparts proactively sought to display the pornographic images such that they could be seen by Plaintiff. To the contrary, Plaintiff testified that one of the males would stand guard for her. And while Plaintiff contends that she heard "moans and groans" through her cubicle wall, there

is no suggestion that these were targeted against her, or otherwise intended to make women uncomfortable in the workplace.

Furthermore, while Mr. Reed's alleged inaction in stopping the viewings could itself be viewed as discriminatory, Plaintiff testified that Mr. Reed took no action because "he was having sex in the office," and not out of some discriminatory animus. Consequently, while the conduct at issue was undeniably repugnant, it was not discriminatory. There is simply no record evidence that the viewings were targeted at Plaintiff, or that they were intended to harass, provoke, or intimidate women in the workplace. As such, summary judgment shall be entered in favor of Defendant on Count I of the Amended Complaint.

**B. Plaintiff's Retaliation Claims**

The Court moves next to Plaintiff's retaliation claims. "Title VII prohibits federal agencies from retaliating against employees for asserting their rights." *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). "Evaluation of Title VII retaliation claims follows the same burden-shifting template as discrimination claims." *Id.* "First, a plaintiff must establish a prima facie case of retaliation; if she meets that burden, the employer must articulate a legitimate nonretaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Id.*

"To establish a prima facie case of retaliation, the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Id.* at 901-02. However, where "the employer has proffered a non-retaliatory explanation for a materially adverse employment action, the sufficiency of the plaintiff's prima facie case is no longer in issue, and 'the only question is whether the employee's evidence creates a material

dispute on the ultimate issue of retaliation.'"  *McGrath v. Clinton*, 666 F.3d 1377, 1380 n.3 (D.C. Cir. 2012) (quoting *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009)).  In this case, Defendant has proffered non-retaliatory reasons for all of the challenged actions.

The Court will grant-in-part and deny-in-part Defendant's motion for summary judgment with respect to Plaintiff's retaliation claims.  First, the Court finds that Plaintiff has not satisfied her burden of establishing that Defendants' non-retaliatory reasons for not giving her discretionary bonuses in 2012 or 2015 were pretext for retaliation.  The Court must accordingly grant summary judgment on those claims for Defendant.  Second, the Court finds that genuine disputes of material fact preclude summary judgment on Plaintiff's claim regarding the removal of her duties with respect to Section 610 Reports.

### 1. Decision Not to Give Bonuses in 2012 and 2015

Plaintiff has not presented evidence that establishes that Defendant's reasons for not giving her discretionary bonuses in 2012 and 2015 were pretext for retaliation.  Defendant represents that Plaintiff was not given a bonus in 2012 because she had been disciplined during the year.  Specifically, on April 4, 2012, Mr. Reed issued Plaintiff an Oral Admonishment Confirmed in Writing.  The admonishment mostly related to Plaintiff's conduct during a March 15, 2012 meeting between Plaintiff and Mr. Reed, during which Plaintiff used profanity and expressed that she no longer wanted to perform certain of her work duties.  The admonishment was upheld on administrative appeal.

Similarly, Defendant represents that Plaintiff was not given a bonus in 2015 because she was again disciplined during that year.  Mr. Reed issued Plaintiff a proposed seven day suspension that year for "failure to complete a work assignment" and "lack of candor," on the grounds that she failed to provide him with a document when requested.  Plaintiff argues in her opposition to summary judgment that a deciding official subsequently "rejected" Mr. Reed's

proposed findings and conclusions, but that is not quite accurate. The deciding official did ultimately decide to issue Plaintiff a Letter of Counseling instead of suspending her, but, like Mr. Reed, she found that Plaintiff "did not take meaningful steps to attempt to comply with the request," and that she was "generally uncooperative."

There is no doubt that these are legitimate, non-retaliatory reasons for Defendant's actions. The basic facts about the conduct that led to Plaintiff's discipline in 2012 and 2015— *e.g.*, Plaintiff's use of profanity and failure to attempt to retrieve a document requested by her supervisor—are not meaningfully in dispute. It is undisputed that Plaintiff and Mr. Reed had a heated discussion in March 2012, during which Plaintiff complained about having to do certain work and used profanity toward her supervisor. There is also no dispute that in 2015 Plaintiff repeatedly claimed that she did not have a document that her supervisor had requested from her, and that the document was later found in her possession. Plaintiff concedes she made no attempt to search for the document in response to her supervisor's request. Plaintiff's inappropriate conduct in the office and her conceded failure to complete a work assignment are legitimate, non-retaliatory reasons for Defendant to have punished her, and those punishments are legitimate, non-retaliatory reasons for not giving her bonuses. *See Baloch*, 550 F.3d at 1200 (affirming summary judgment for employer on retaliation claim where employer represented that it had taken action because of employee's "failure to comply with instructions or respect [his supervisor's] authority," noting that "'[g]ood institutional administration' justified disciplining [plaintiff] for these breaches of orders and office etiquette."); *Gurara v. District of Columbia*, 881 F. Supp. 2d 143, 150 (D.D.C. 2012) ("It goes without saying that" insubordination, malfeasance, and the use of abusive or offensive language "are a legitimate basis for disciplinary action."). Accordingly, because Defendant proffered legitimate, non-retaliatory reasons for its

actions, the burden shifted to Plaintiff to present evidence that these were not Defendant's *actual* reasons for not giving Plaintiff bonuses in 2012 and 2015, and were instead merely pretext for retaliation.

Plaintiff has not satisfied this burden. Instead of presenting any evidence of pretext, Plaintiff uses her opposition to Defendant's motion for summary judgment to provide justifications for her conduct during the March 2012 meeting and for her failure to provide her supervisor with the document he requested in 2015—without genuinely disputing that this conduct occurred. In response to the charge that she became angry and used profanity in the 2012 meeting, Plaintiff argues that "Mr. Reed himself became very angry at the meeting and had previously used profanity in the workplace." Pl.'s Opp'n at 13. In response to the charge that she did not provide Mr. Reed with the document he requested in 2015, Plaintiff argues that she reasonably did not believe that she had the document because responsibility over it had been transferred from her to another employee sometime before. *Id.* at 17.

Plaintiff's arguments are not sufficient to satisfy her burden. Absent evidence that her underlying punishments were so ill-justified that they must have been pretextual or retaliatory—which is not the case here given the undisputed facts regarding those punishments—it is not the Court's role to second guess the correctness or fairness of Defendant's disciplinary actions. Instead, the Court's role is to determine whether Plaintiff has presented proof that Defendant's proffered reasons for not giving her bonuses were not its *real* reasons. Plaintiff may believe she should not have been punished, but she undisputedly was. Plaintiff has not presented evidence that her punishments were not the genuine reason she was not given bonuses. Defendant is accordingly entitled to summary judgment. *See McGrath*, 666 F.3d at 1384-85 (affirming summary judgment for employer where it took adverse action against plaintiff based on his

failure to heed instructions and complete work assignments where the basic facts of these incidents were not in dispute and plaintiff merely "offered explanation for some of his actions, and . . . note[d] that he made useful contributions" elsewhere, but such arguments did not establish pretext); *Baloch*, 550 F.3d at 1200 (affirming summary judgment for employer where employer proffered plaintiff's workplace infractions as non-retaliatory reason for adverse personnel action and plaintiff conceded the infractions occurred but merely "argue[d] that he had reasons for committing the infractions"); *Velikonja v. Gonzales*, 501 F. Supp. 2d 65, 75-76 (D.D.C. 2007) (granting summary judgment for employer where employer proffered plaintiff's misconduct as reason for adverse action and although plaintiff argued that she did not, in fact, commit that misconduct, plaintiff was required to "do more than attack the merit of defendant's underlying charges against her").

Moreover, Plaintiff's attempts to rely on comparisons between herself and Mr. Finnie to establish pretext fail. To use comparator evidence to demonstrate pretext, "[a] plaintiff must . . . demonstrate that all of the relevant aspects of [her] employment situation were nearly identical to those of the [other] employee." *Burley v. National Passenger Rail Corp.*, 801 F.3d 290 (D.C. Cir. 2015) (internal quotations omitted). Plaintiff argues that Mr. Finnie received a bonus in 2012 when she did not despite the fact that he "had no regular job responsibilities other than preparing timecards every two weeks and would frequently watch pornography in his cubicle." Pl.'s Opp'n at 43. Even assuming the truth of these statements, there is no evidence that Mr. Finnie was caught engaging in any illicit behavior or received any punishment during the 2012 evaluation period. It is undisputed, on the other hand, that Plaintiff was punished during that time. Accordingly, she and Mr. Finnie were not similarly situated with respect to the reason Mr. Reed declined to give Plaintiff a bonus in 2012. Similarly, the Court is not persuaded that Mr.

Finnie constitutes an appropriate comparator in the context of Plaintiff's 2015 punishment. Plaintiff argues that Mr. Reed treated her unfairly because he asked the OIT to search Plaintiff's email for the document she refused to provide, whereas he refused to search Mr. Finnie's computer for pornography on the basis of Plaintiff's allegation that he was viewing such material at work. These situations are fundamentally dissimilar, and accordingly Mr. Reed's different reaction to them is not evidence of pretext.

In sum, while Plaintiff may believe that her conduct in 2012 and 2015 did not warrant the punishments she received in those years, she undisputedly did receive punishments during those years and there is no evidence that they were not the actual reason that she did not receive bonuses. Absent any evidence of such pretext, the Court will grant Defendant's motion for summary judgment on her retaliation claims based on her failure to receive bonuses in 2012 and 2015. *See Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 126 (D.D.C. 2014) (granting summary judgment for employer because plaintiff failed to show that employer's withholding of bonus based on plaintiff's receipt of official reprimand was pretext).

## 2. Removal of Section 610 Report Duties

The Court will not, however, grant summary judgment on Plaintiff's retaliation claim based on the removal of her duties with respect to the Section 610 Reports. The Court finds that genuine disputes exist regarding material facts both with respect to (a) whether the removal of this work was a sufficiently "adverse" action and (b) whether Defendant's proffered non-retaliatory reason for this action was pretextual. The Court also finds that (c) Plaintiff has exhausted her administrative remedies for this claim.

### a. Whether the Removal of Plaintiff's Section 610 Report Duties Was a Materially Adverse Action

The parties dispute whether the alleged removal of Plaintiffs' duties with respect to the preparation of Section 610 Reports was a sufficiently "adverse" action to support a claim for retaliation. In order to succeed on her claim, Plaintiff must demonstrate that she was subjected to an adverse employment action that was "material," *i.e.*, "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). In determining whether a particular action would dissuade a reasonable worker from pursuing a charge of discrimination, courts look to the "particular circumstances" of the action, so as to determine whether the adverse action resulted in an *objective harm* to the worker. *See Burlington*, 548 U.S. at 68-69; *see also id.* at 68 ("We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective."). Reassignments of duties may qualify as adverse employment actions "if they result in 'materially adverse consequences affecting the terms, conditions, or privileges' of the plaintiff's employment.'" *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)).

Summary judgment is not appropriate on this issue. The D.C. Circuit has held that "whether a particular reassignment of duties constitutes an adverse action is generally a jury question." *Pardo-Kronemann*, 601 F.3d at 607 (quoting *Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007)). This is particularly true in cases like this one, where the nature of allegedly removed duties is the subject of various factual disputes. The parties dispute the nature of Plaintiff's work on the Section 610 Reports, whether the work was "ministerial" or "high level," the extent to which Plaintiff was supervised, whether continued work on the reports could have

supported a promotion, and whether talks about such a promotion had in fact already begun before the alleged retaliation. Both sides have presented at least some evidence supporting their positions. Given these genuine and material factual disputes, the Court will not grant summary judgment for Defendant on this basis.

> **b. Whether Plaintiff Has Rebutted Defendant's Proffered Non-Retaliatory Rationale**

The Court also concludes that Plaintiff has presented enough evidence suggesting that Defendant's proffered non-retaliatory reasons for removing these duties may have been pretext for retaliation to preclude summary judgment. Defendant claims that Plaintiff no longer needed to perform her duties on Section 610 Reports for a period of approximately four years because the office had shifted priorities and no work was being done on those reports at all. To the extent that Plaintiff's responsibility for the work on these reports that *was* being done decreased, Defendant claims that this was due to the fact that Plaintiff's supervisor took a more hands-on approach with respect to the reports after an individual from another FCC office brought an error in the 2011 report to her attention that caused her to be concerned about Plaintiff's performance.

Contrary to Defendant's proffered explanation, Plaintiff has presented evidence suggesting that the real reason for the precipitous decline in her Section 610 Report duties was retaliation for her EEO complaints. At the same meeting where Plaintiff's supervisor raised the perceived error she claimed Plaintiff had made in the 2011 report—a meeting that occurred only three days after Plaintiff filed the EEO complaints—Plaintiff testified that her supervisor first asked her why she had filed her complaints and sought to discourage her from pursuing them. According to Plaintiff's testimony, the meeting became heated as her supervisor accused Plaintiff of mishandling the reports. Shortly after the meeting, Plaintiff's work on the Section 610 Reports, which had been one of her primary responsibilities during her tenure at the FCC,

effectively ceased. Although the reports had been timely filed pursuant to statutory mandate during the time period Plaintiff had been responsible for them, the 2011 report that she had prepared "remained on [her supervisor's] desk" for the next four years, Pl.'s Stmt. ¶ 65, which effectively prevented Plaintiff from doing any further work on that report or the reports for any future years during that time.

Defendant disputes Plaintiff's characterization of these events. However, the Court cannot make credibility determinations on a motion for summary judgment—instead, the evidence must be analyzed in the light most favorable to Plaintiff, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. Doing so here, the Court is compelled to find that Plaintiff has offered some evidence that Defendant's decision to cease work on Section 610 Reports—which deprived Plaintiff of the opportunity to work on them—was connected to Plaintiff's supervisor's frustration with Plaintiff over her filing of EEO complaints. Accordingly, genuine disputes exists with respect to facts material to whether Defendant's proffered non-retaliatory reason for removing Plaintiff's Section 610 Reports duties was pretext for retaliation. Summary judgment must be denied.

### c. Exhaustion of Administrative Remedies

Finally, the Court is not persuaded by Defendant's argument that this claim should be dismissed for failure to exhaust administrative remedies. It is undisputed that Plaintiff filed a formal complaint about her duties with respect to the Section 610 Reports after her October 18, 2012 meeting with Ms. Fleming-Williams, and that this complaint was accepted by the Office of Workplace Diversity. Def.'s Ex. Q, ECF No. 41-18. However, Defendant argues that this complaint failed to sufficiently set out Plaintiff's particular claim here—that she was retaliated against when those duties were removed from her. That particular claim, Defendant argues,

came only later, and more than forty-five days after the alleged retaliation, when her attorney submitted a letter of amendment purporting to "correct" the agency's letter of acceptance of Plaintiff's complaint by noting that the letter of acceptance had omitted Plaintiff's claim that Ms. Fleming-Williams "took away Ms. Stewarts's substantive duties in connection with the Section 610 Report." Def.'s Ex. LL, ECF No. 41-39.

The Court finds that Plaintiff's original complaint satisfied her exhaustion obligations by putting Defendant on notice of her claim. The test for determining whether Plaintiff administratively exhausted her claims is whether she "timely provide[d] the [FCC] with 'sufficient information to enable the agency to investigate the claim[s].'" *Coleman v. Duke*, 867 F.3d 204, 210 (D.C. Cir. 2017) (quoting *Artis v. Bernanke*, 630 F.3d 1031, 1034-35 (D.C. Cir. 2011)). Plaintiff did so here. In her complaint, Plaintiff checked the box for "reprisal" and stated the key facts underling her retaliation claim in this case: that "Ms. Carolyn Williams harassed Ms. Stewart regarding preparing the Section 610 Notice subsequent to the Office of General Counsel's procedural review of project and tried to use the OGC general inquiries as leverage against Ms. Stewart; accused Ms. Stewart of developing a rapport with the agency attorney's and Points of Contact to complete the work assignments and withholding status of projects from her . . . berated Ms. Stewart . . . threatened Ms. Stewart's job security," and "falsely stated to OGC that she'd done the assignment completed by Ms. Stewart." Def.'s Ex. Q, ECF No. 41-18.

This complaint may not have used the exact words to describe Plaintiff's retaliation claim as her attorney would later use in the complaint in this lawsuit, but "EEO complaints are to be liberally construed 'since very commonly they are framed by persons unschooled in technical pleading.'" *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (quoting *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 595 F.2d 711, 727 (D.C. Cir. 1978)). "[T]he relevant inquiry is not whether

the complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were 'adequate to put the [agency] on notice.'" *Id.* (quoting *President v. Vance,* 627 F.2d 353, 361 (D.C. Cir. 1980)). Plaintiff's actions in this case were sufficient to put Defendant on notice.

At the very least, the retaliation claim Defendant now pursues is sufficiently "like or reasonably related to" the reprisal claim described in Plaintiff's administrative complaint that the Court would allow Plaintiff's claim to go forward on the theory that the district court may consider Title VII claims "that are 'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'" *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994)).[3]

---

[3] The Court does not reach Defendant's administrative exhaustion arguments with respect to Plaintiff's other claims. These claims have been dismissed on the merits and accordingly the Court need not decide whether they are also appropriately dismissed on the basis of administrative exhaustion, which is an affirmative defense and non-jurisdictional. *See Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) ("Title VII's exhaustion requirements are not jurisdictional"); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("untimely exhaustion of administrative remedies is an affirmative defense").

## IV. CONCLUSION

For the reasons discussed above, the Court shall GRANT-IN-PART and DENY-IN-PART Defendant's motion for summary judgment. The Court will grant summary judgment for Defendant on Plaintiff's hostile work environment claim and her retaliation claims based on denial of bonuses. The Court will deny Defendant's motion for summary judgment on Plaintiff's retaliation claim regarding her Section 610 Report duties. Genuine disputes of material fact preclude summary adjudication of that claim. An appropriate Order accompanies this Memorandum Opinion.

                                        /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge